# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVIE RAFALKO MCNULTY, Recorder of Deeds of Lackawanna County, Pennsylvania, | : <br> : CIVIL ACTION NO. 3:12-1822 <br> : <br> : (JUDGE MANNION[1]) |
| Plaintiff | : |
| v. | : |
| FEDERAL HOUSING FINANCE AGENCY, as conservator for Federal National Mortgage Association and Federal Home Loan Mortgage Corporation; FEDERAL NATIONAL MORTGAGE ASSOCIATION, a federally chartered corporation; and FEDERAL HOME LOAN MORTGAGE CORPORATION, a federally chartered corporation, | : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendants | : |

# **M E M O R A N D U M**

Pending before the court is the defendants' motion to dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted. (Doc. No. 29). Based upon the court's review of the record, the defendants' motion to dismiss will be granted and the plaintiff's request for class certification will be dismissed as moot.

---

[1]The instant action was originally assigned to the Honorable Robert D. Mariani. By verbal order, on January 7, 2013, the matter was reassigned.

## I. PROCEDURAL HISTORY

By way of relevant background, on September 11, 2012, the plaintiff filed the instant proposed class action complaint on behalf of herself and others similarly situated, including the 67 counties, municipalities, state entities and their respective officers throughout the State of Pennsylvania that collect or receive distributions from transfer or similar taxes involving the transfer of real property. Plaintiff seeks to compel defendants the Federal National Mortgage Association, ("Fannie Mae"), and the Federal Home Loan Mortgage Corporation, ("Freddie Mac"), and their conservator, the Federal Housing Finance Agency, ("FHFA"), to pay the realty transfer tax charged upon recording real property transferred in Pennsylvania. (Doc. No. 1). An amended complaint was filed on November 9, 2012. (Doc. No. 8).

On December 20, 2012, the defendants filed the instant motion to dismiss the plaintiff's amended complaint for failure of the plaintiff to state a claim upon which relief can be granted, (Doc. No. 29), along with a brief in support thereof, (Doc. No. 30). On February 1, 2013, the plaintiff filed a brief in opposition to the defendants' motion to dismiss. (Doc. No. 47). The defendants filed a notice of new authority on February 25, 2013, (Doc. No. 50), and a reply brief in support of their motion to dismiss on March 5, 2013, (Doc. No. 52). A second notice of new authority was filed by the defendants

on March 28, 2013, (Doc. No. 53), followed by a third on May 9, 2013, (Doc. No. 54), and a fourth on May 28, 2013, (Doc. No. 55).

## II.     STANDARD OF REVIEW

In deciding the defendants' motion to dismiss, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). However, the court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). The court also need not accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 554 (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (holding that, while the complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements"

of a claim and must state a claim that is plausible on its face) (quoting Bell Atlantic Corp. v. Twombly, supra, and providing further guidance on the standard set forth therein).

In deciding the defendants' motion, the court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which the plaintiff has identified as the basis of their claim. See Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**III. DISCUSSION**

**A. Class Action Certification**

As an initial matter, the plaintiff alleges in the amended complaint that she brings the instant action on behalf of herself and as a class action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure. As such, she provides allegations relating to numerosity, commonality and predominance, typicality, adequacy of representation, declaratory and injunctive relief, and superiority. She requests as relief that the court declare that the instant action may be maintained as a class action and certify the class.

Pursuant to Fed.R.Civ.P. 23(c)(1), "[a]t an early practicable time after

a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Middle District of Pennsylvania Rules of Court provide, in relevant part, "[w]ithin ninety (90) days after filing of a complaint in a class action, unless this period is extended on motion for good cause appearing, the plaintiff shall move for a determination under subdivision (c)(1) of Fed.R.Civ.P. 23, as to whether the case is to be maintained as a class action." L.R. 23.3.

In the instant action, contrary to L.R. 23.3, the plaintiff has not moved for a determination under Fed.R.Civ.P. 23(c)(1) as to whether this case is to be maintained as a class action. Regardless, absent prejudice to the plaintiff, the court is free to decide a defendant's dispositive motion in a putative class action before taking up the issue of class certification. See, e.g., Kehoe v. Fidelity Federal Bank & Trust, 421 F.3d 1209, 1211 n.1 (11th Cir. 2005) (finding no error in the court's decision to decide dispositive motion prior to addressing the plaintiff's motion for class certification); Curtin v. United Airlines, Inc., 275 F.3d 88, 92-93 (D.C.Cir. 2001) (holding that "where . . . the plaintiffs' claims can be readily resolved on summary judgment, where the defendant seeks an early disposition of those claims, and where the plaintiffs are not prejudiced thereby, a district court does not abuse its discretion by resolving the merits before considering the question of class certification"); Mira v. Nuclear Measurements Corp., 107 F.3d 466, 474-76 (7th Cir. 1997)

(deciding dispositive motion prior to ruling on class certification was an appropriate way to deal with meritless litigation). See also Cowen v. Bank United of Tex., FSB, 70 F.3d 937, 941-42 (7th Cir. 1995); Wright v. Shock, 742 F.2d 541, 543-44 (9th Cir. 1984); Mais v. Gulf Coast Collection Bureau, Inc., __F.3d__, 2013 WL 1899616 (S.D.Fla.) (citing Telfair v. First Union Mortg. Corp., 216 F.3d 1333, 1343 (11th Cir. 2000); Santana v. Deluxe Corp., 12 F.Supp.2d 162, 179 (D.Mass. 1998); Ramirez v. DeCoster, 194 F.R.D. 348, 355 (D.Me. 2000). The discretion of the court to determine dispositive motions prior to class certification is supported by the Advisory Committee Notes to the 2003 amendments to Rule 23 which expressly recognize "the many valid reasons that may justify deferring the initial certification decision," including the possibility that "[t]he party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified."

Here, there is no prejudice to the plaintiff or the putative class members which is apparent from ruling on the defendants' motion to dismiss prior to ruling on the issue of class certification. Moreover, the plaintiff has neither moved for class action certification pursuant to L.R. 23.3, nor has she objected in her response to the defendants' motion to dismiss to having the motion decided before consideration of whether to certify the class. As such, in the interest of efficiency and economy, the court will rule on the defendants'

motion to dismiss without first making a determination with respect to class certification[2].

## B. Defendants' Motion to Dismiss

By way of factual background, defendant Fannie Mae is a corporation which was chartered by Congress in 1938 in order to "establish secondary market facilities for residential mortgages," to "provide stability in the secondary market for residential mortgages," and to "promote access to mortgage credit throughout the Nation." 12 U.S.C. §1716.

Defendant Freddie Mac is a corporation which was chartered by Congress in 1970 for substantially the same purposes as Fannie Mae, including to "provide ongoing assistance to the secondary market for residential mortgages," to strengthen and support "mortgages on housing for low- and moderate-income families" by "increasing the liquidity" of the market, and "to promote access to mortgage credit throughout the Nation." Id. §1451.

Defendant FHFA is an independent federal agency created under the Housing and Economic Recovery Act of 2008, Pub.L.No. 110-289, 122 Stat.

---

[2]Of course, any ruling by the court prior to class certification would bind only the named parties. See Mais v. Gulf Coast Collection Bureau, Inc., 2013 WL 1899616 at *3 (citing Thorton v. Mercantile Stores Co., Inc., 13 F.Supp.2d 1282, 1289-90 (M.D.Ala. 1998); Cowen, 79 F.3d at 941-42)). See also Wright v. Schock, 742 F.2d at 544.

2654, *codified in part at* 12 U.S.C. §4617, et seq. In September of 2008, the Director of FHFA placed Fannie Mae and Freddie Mac into conservatorships "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs . . ." 12 U.S.C. §4617(a)(2). As conservator, the FHFA assumed the powers and management of Fannie Mae and Freddie Mac. Id. §4617(b)(2).

In creating Fannie Mae and Freddie Mac, Congress exempted the entities from "all" state and local taxes except for taxes on real property. Specifically, Congress included in the charter of Fannie Mae:

> The corporation, including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, shall be exempt from all taxation now or hereafter imposed by any State, . . . county, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, . . . county, municipal, or local taxation to the same extent as other real property is taxed.

12 U.S.C. §1723a(c)(2).

Similarly, the charter of Freddie Mac provides:

The Corporation, including its franchise, activities, capital, reserves, surplus, and income, shall be exempt from all taxation now or hereafter imposed by any . . . State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, . . . county, municipal, or local taxation to the same extent according to its value as other real property is taxed.

12 U.S.C. §1452(c).

As conservator, the FHFA was granted a similar exemption:

The Agency [as Conservator], including its franchise, its capital,

8

> reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any property of the Agency [as Conservator] shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed . . .

[12 U.S.C. §4617(j)(2)](#).

In the instant action, the plaintiff alleges that defendants Fannie Mae and Freddie Mac own and sell as "Grantors," or otherwise, real property situated within Lackawanna County, Pennsylvania, as well as in cities, counties or other state governmental subdivisions, and become property owners through their respective mortgage and foreclosure activities.

Defendants Fannie Mae and Freddie Mac purchase mortgages on the secondary market, pool them, and then re-sell those mortgages as mortgage backed securities to investors on the open market, which is designed to enlarge the supply of money available for mortgage lending and home purchases.

The plaintiff alleges that when homeowners fall into delinquency on their mortgage payments and enter into foreclosure proceedings on a mortgage held by Fannie Mae or Freddie Mac, the entities will typically take full ownership of the property and then attempt to locate a buyer. Upon finding a buyer, the entity which took ownership will convey the property as "Grantor" (or "seller") to the new owner (the "buyer" or "Grantee") and record the deed.

Upon completing the conveyance of title, however, the plaintiff alleges that Fannie Mae and Freddie Mac have an obligation under Pennsylvania law, including state, county, municipal, and school district requirements, to pay transfer taxes, which are to be paid to the Recorder in the County where the transfer took place based upon the value of the property transferred. Specifically, the plaintiff alleges that the Pennsylvania Realty Transfer Tax Law, 72 P.S. §§8102-C et seq., provides, in part, as follows:

> Every person who makes, executes, delivers, accepts or presents for recording any document or in whose behalf any document is made, executed, delivered, accepted or presented for recording, shall be subject to pay for and in respect of the vellum parchment or paper upon which such document is written or printed, a State tax at the rate of one per cent of the value of the real estate represented by such document, which State tax shall be payable at the earlier of the time the document is presented for recording or within thirty days of acceptance of such document or within thirty days of becoming an acquired company.

In addition, pursuant to 16 Pa.C.S.A. §11011-6, the plaintiff alleges that she is the authorized collection agent for Lackawanna County of the above described transfer taxes as are other Recorders of Deeds throughout the State of Pennsylvania and, likewise, 53 P.S. §6924.301.1(f)(1) authorizes political subdivisions such as Lackawanna County and cities such as Scranton, to levy and collect their own real estate transfer taxes, for which the plaintiff is again the authorized collection agent.

The plaintiff alleges that any funds paid to the Recorder are for the

benefit of the respective taxing authorities subject to distributions to them. The plaintiff alleges that Fannie Mae and Freddie Mac have ignored these legal requirements claiming that they are either exempt from the tax because they are agencies or instrumentalities of the United States government or that the language in their charters exempt them from paying transfer taxes such as those imposed under Pennsylvania law. According to the plaintiff, the failure of Fannie Mae and Freddie Mac to pay the required transfer taxes deprives local governments of significant tax revenue to which they are legally entitled.

The plaintiff alleges that the transfer taxes are an appropriate and essential source of revenue and that the loss of these revenues has been particularly significant over the last five years when local and state budgets have been severely strained as a result of the recession. During this time, the plaintiff alleges that substantial amounts of real properties have been taken over and sold by Fannie Mae and Freddie Mac, and by failing to pay the transfer taxes due on the sale of the real properties, Fannie Mae and Freddie Mac have deprived localities of substantial revenues that they desperately need.

The plaintiff is seeking repayment of prior transfer taxes that defendants have failed to pay and to enjoin defendants from future failures to pay transfer taxes.

11

**I. The defendants are statutorily exempt from the transfer taxes.**

Relying on a string of Supreme Court decisions, including [Fed. Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95 (1941)](), the defendants argue that looking at the plain language of their charters they are statutorily exempt from paying the transfer taxes sought by the plaintiff. The plaintiff, on the other hand, argues that the Supreme Court's decision in [United States v. Wells Fargo Bank, 485 U.S. 351 (1988)](), makes clear that the phrase "all taxation" included in the charters does not include taxes like the realty transfer tax in this case, but only includes direct taxes. The plaintiff further argues that Bismarck and the other Supreme Court cases upon which defendants rely do not apply to this case and that the District Court cases upon which defendants rely misinterpret Wells Fargo.

This issue of whether the reasoning of Bismarck or Wells Fargo applies to the statutory language at hand in determining whether "all" means "all" for purposes of determining if the defendants are exempt from paying taxes on the transfer of real property has been before a number of courts recently. From this court's research, with the exception of one court which was just recently overturned on appeal[3], every court to decide the matter has

---

[3]See [Oakland Cnty. v. Fed. Hous. Fin. Agency, 871 F.Supp.2d 662 (E.D.Mich 2012)]() (granting summary judgment for plaintiffs finding that Wells Fargo was "dispositive of Plaintiff's case," and that "[t]he Court in Wells Fargo

determined that the reasoning of Bismarck applies and that the plain meaning of the statutes exempts the defendants from paying transfer taxes identical in nature to those sought here. See e.g., Oakland Cnty. v. Fed. Hous. Fin. Agency, __F.3d__, 2013 WL 2149964 (6th Cir. May 20, 2013); Athens-Clarke County Unified Gov't v. Fed. Hous. Fin. Agency, __F.Supp.2d__, 2013 WL 2102922 (M.D.Ga. May 14, 2013); Hennepin Cnty. v. Fed. Nat. Mortgage Ass'n, __F.Supp.2d__, 2013 WL 1235589 (D.Minn. Mar. 27, 2013); Nicolai v. Fed. Hous. Fin. Agency, __F.Supp.2d__, 2013 WL 899967 (M.D.Fla. Feb. 12, 2013); Hertel v. Bank of America, __F.Supp.2d__, 2012 WL 4127869 (W.D.Mich. Sept. 18, 2012); Hager v. Fed. Nat'l Mortgage Assoc., 882 F.Supp.2d 107 (D.D.C. 2012); Montgomery County Comm'n v. Fed. Hous. Fin. Agency, 2013 WL 1896256 (M.D.Ala. May 6, 2013); Delaware County, PA v. Fed. Hous. Fin. Agency, 2013 WL 1234221 (E.D.Pa. Mar. 26, 2013); Fannie Mae v. Hamer, 2013 WL 591979 (N.D.Ill. Feb. 13, 2013). This court agrees with the reasoning of the vast majority of courts to find that, under the

---

recognized that 'all taxation' had an understood meaning, and that it applied only to direct taxes, not excise taxes, which the parties agreed the transfer taxes constituted), *vacated and remanded by* __F.3d__, 2013 WL 2149964 (6th Cir.) (finding the plaintiffs' arguments relying on Wells Fargo to be without merit and applying the reasoning of Bismarck and United States v. State of Mich., 851 F.2d 803, 805 n.1 (6th Cir. 1988), for its holding that the statutes' language exempted defendants from paying transfer taxes on real estate transactions).

reasoning of Bismarck, the "all taxation" language of the statutes means "all" taxation and that the defendants are exempt from paying taxes on transfers of real estate such as those sought in this case.

The decision in Wells Fargo, which established the meaning of "all taxation" for statutes that exempt a particular type of property from taxation[4], has no relevance here where the court is interpreting statues that exempt a specific entity from taxation[5]. Instead, this is what the Court addressed in Bismarck. Specifically, in Bismarck, a bank, which was created pursuant to the Federal Farm Loan Act of 1916, 12 U.S.C. §§931-33, acquired property to which it then proceeded to make repairs and improvements. The bank refused to pay sales tax on the materials used in the repairs and improvements citing to the Farm Loan Act, which provided, in relevant part, "'every Federal land bank and every national farm loan association, including

---

[4]In Wells Fargo, the Court considered whether public housing agency notes were exempt from federal estate taxes. Wells Fargo, 485 U.S. at 352. The Court held that, although Congress used the words "all taxation" in exempting the notes from federal estate taxes, "an exemption of property from all taxation had an understood meaning: the property was exempt from direct taxation, but certain privileges of ownership, such as the right to transfer the property, could be taxed." Id. at 355 (emphasis added).

[5]Although the plaintiff argues that this is a distinction without difference, the Court in Wells Fargo repeatedly made it a point to emphasize that it was addressing the exemption of property from all taxation, which it held had an understood meaning that only applied to direct taxes and excluded an exemption from excises taxes.

14

the capital and reserve or surplus therein and the income derived therefrom, shall be exempt from Federal, State, municipal, and local taxation, except taxes upon real estate held, purchased, or taken by said bank or association.'" Id. at 97 n.1 (quoting 12 U.S.C. §§931-933 (repealed 1971)). The Supreme Court decided that the statute exempted the bank from paying the sales tax dismissing arguments that Congress could not exempt banks performing non-governmental functions from taxation. In doing so, the Court stated that "Congress has the power to protect the instrumentalities which it has constitutionally created." Id. at 102-03 (citing Pittman v. Home Owners' Loan Corp., 308 U.S. 21, 60 S.Ct. 15, 84 L.Ed. 11 (1938)).

Here, the defendants are entities entitled to a similar exemption from taxation which was provided by Congress at their inception. Through statutory analysis, the Court has held that, whether or not the defendants are considered federal instrumentalities, Congress has the power to exempt them from taxation.

In her brief, the plaintiff argues that such an "unbridled interpretation" of the statute renders the charter exemptions unconstitutional under United States v. New Mexico, 455 U.S. 720 (1988). In that case, the plaintiff argues that the Court held that "[t]ax immunity is appropriate in only one circumstance: when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot

15

realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned." Because the faces of Fannie Mae and Freddie Mac have so changed since their inception, the plaintiff argues that neither is an agency or instrumentality of the federal government and cannot constitutionally enjoy immunity from taxation under United States v. New Mexico.

In considering the plaintiff's argument, however, the Court in United States v. New Mexico addressed only "constitutional immunity." In other words, the Court addressed the rule that "a State may not, consistent with the Supremacy Clause, U.S. Const., Art. VI, cl. 2, lay a tax directly upon the United States," Id. at 733, and spoke not to Congress's power to grant, through statute, tax immunity to private corporations which the federal government has created. See e.g., United States v. Michigan, 851 F.2d 803, 806 (6th Cir. 1988) (noting that federal credit unions may be "entitled to constitutional, as well as, statutory immunity from state taxation"). In fact as indicated above, the Court in Bismarck rejected the premise that a private entity can gain congressional exemption from state taxation only if it is a "federal instrumentality" performing traditional governmental functions. Athens-Clarke Cnty. Unified Gov't ex rel. Denson v. Fed. Hous. Fin. Agency, __F.Supp.2d__, 2013 WL 2102922 (M.D. Ga. May 14, 2013). See also, First Agricultural Nat'l Bank v. State Tax Comm'n, 392 U.S. 339 (1968) (finding that

16

a federal statute was sufficient to exempt a federally created bank from paying a Massachusetts sales tax regardless of the bank's instrumentality status); Ariz. Dept. of Revenue v. Blaze Const. Co., Inc., 526 U.S. 32 (1999) (recognizing that Congress may expressly exempt private companies from paying state taxes); United States v. City of Detroit, 355 U.S. 466 (1958) (same). Thus, this court does not find that interpreting the language of the charters to allow the defendants exemptions from the transfer taxes would be unconstitutional under United States v. New Mexico as the plaintiff argues.

### ii. The real property exception to the tax exemption is inapplicable in this case.

The plaintiff further argues that the defendants must also pay the realty transfer tax based on the plain language of the real property or "carve out" exception within the charter exemptions.

As indicated above, the exemptions at issue contain an exception to the extent that "any real property of the [defendants] shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed." See e.g., 12 U.S.C. §§1723a(c)(2); 1452(e); 4617(j)(2). Initially, with respect to this exception, the Supreme Court has stated that "[w]hen congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference . . . is that

17

Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." United States v. Johnson, 529 U.S. 53, 58 (2000). Moreover, the tax at issue is on the privilege to transfer real property, not on the property itself. Indeed, Wells Fargo made a clear distinction between a tax on property and an excise tax such as the one at hand. In this regard, the Court explained that "an excise tax, which is levied upon the use or transfer of property," is distinct from "a tax levied upon the property itself." 485 U.S. at 355. The Court in Bismarck also made the distinction between a tax on the transfer of property and a tax on the property itself and concluded that "[i]t cannot be seriously contended that the tax falls within the real estate exception." Bismarck, 314 U.S. at 101. As it is apparent that the statutes' exception to the exemption applies to taxes imposed directly on the real property itself and not on the transfer of the real property, this court finds the plaintiff's argument that the transfer tax at hand falls within the carve-out exception unavailing.

### iii. Plaintiff's request for class action certification is moot.

The court's finding that the plaintiff's complaint fails to state a claim upon which can be granted disqualifies the plaintiff as a proper class representative and effectively moots the question of whether to certify the action as a class action. See e.g., Chavez v. Illinois State Police, 251 F.3d

612, 629-30 (7th Cir. 2001) (citing Cowen v. Bank United of Tx., 70 F.3d 937, 941 (7th Cir.1995)); Mais v. Gulf Coast Collection Bureau, Inc., __F.Supp.2d__, 2013 WL 1899616 (S.D.Fla. May 8, 2013). Since the basis of the court's dismissal would apply equally to any other member of the purported class attempting to bring the claims raised by the plaintiff, a proper class representative is essentially non-existent. As such, the plaintiff's request to certify the instant action as a class action will be dismissed as moot.

**IV.   CONCLUSION**

On the basis of the foregoing, the defendants' motion to dismiss the plaintiff's amended complaint, **(Doc. No. 29)**, will be **GRANTED**.

*s/Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date:  June 19, 2013**
O:\Mannion\shared\MEMORANDA - DJ\2012 MEMORANDA\12-1822-01.wpd